UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

INTERNATIONAL BUSINESS MACHINES
CORPORATION,

          Plaintiff,

    v.

GEOFFREY VALENTINE,

          Defendant.

13 Civ. **13 CV 4930**

**COMPLAINT**    JUDGE BRICCETTI

JURY TRIAL DEMANDED

International Business Machines Corporation ("IBM" or the "Company"), by its attorneys, Paul, Weiss, Rifkind, Wharton & Garrison LLP, upon personal knowledge with respect to itself and its actions and otherwise on information and belief, alleges as follows:

### Nature of the Action

1. IBM brings this action for damages and injunctive relief under 18 U.S.C. § 1030 (hereinafter the "Computer Fraud and Abuse Act" or the "CFAA") against Geoffrey Valentine, a long time IBM manager who was employed by the Company for 13 years, for causing IBM damage and/or loss through his unauthorized accessing of a protected computer to obtain IBM information. IBM also seeks damages and injunctive relief prohibiting Mr. Valentine from accessing, using, or disclosing IBM confidential information in violation of the continuing obligations contained in the Agreement Regarding Confidential Information, Intellectual Property, and Other Matters (the "Confidentiality Agreement") that Mr. Valentine signed with IBM on March 17, 1981, which ongoing obligations Mr. Valentine reaffirmed in writing in the IBM Statement of Understanding he signed upon leaving the Company in March 2009.

2. As a result of his employment at IBM for over 18 years, Mr. Valentine knew certain IBM confidential information and trade secrets, the use or disclosure of which would cause IBM irreparable harm.

3. To protect IBM against that harm, Mr. Valentine's Confidentiality Agreement requires that he refrain from using or disclosing IBM confidential information without IBM's prior written permission. The Confidentiality Agreement also provides that Mr. Valentine was required to return to the Company all IBM confidential information in his possession at the time his IBM employment terminated in 2009.

4. In violation of his ongoing contractual obligations to IBM under the Confidentiality Agreement, the common law, and applicable federal statutes, Mr. Valentine has retained, withheld, and accessed IBM confidential information and trade secrets—including information and data stored in computers Mr. Valentine has no authority to access—without permission of the Company. Mr. Valentine *admitted* those facts in writing, and confirmed to IBM that he (a) possesses IBM confidential information that he will not return to the Company and (b) has accessed computerized IBM confidential information without authority, and will do so again in order to cause harm to IBM.

5. IBM has incurred losses in excess of $5,000 as a result of Mr. Valentine's declaration that he has accessed IBM systems without authority. In addition, IBM will suffer irreparable injury if Mr. Valentine uses or discloses the confidential and proprietary information that he possesses to IBM's detriment, as he has threatened to do.

6. IBM therefore seeks injunctive relief requiring Mr. Valentine to return all IBM confidential information in his possession, prohibiting Mr. Valentine from

using or disclosing any IBM confidential information in his possession and from continuing to access IBM confidential information without proper authorization, and ordering Mr. Valentine to disclose the means by which he claims to have unauthorized access to IBM's confidential information.

7. IBM also seeks damages for the harm Mr. Valentine has already caused the Company through his unauthorized access, use, and misappropriation of IBM confidential information.

## Parties

8. IBM is a corporation organized under the laws of the State of New York with its principal place of business located in Armonk, New York.

9. Geoffrey Valentine is an individual who resides in Binghamton, New York.

## Jurisdiction and Venue

10. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and the CFAA, 18 U.S.C. § 1030.

11. The Court has supplemental jurisdiction over IBM's state-law claim pursuant to 28 U.S.C. § 1367.

12. The Court has personal jurisdiction over Mr. Valentine because he resides within the State of New York.

13. Venue properly lies in this Court pursuant to 28 U.S.C. § 1391 because IBM's headquarters and principal place of business are situated within this judicial district and a substantial part of the events giving rise to the claims occurred in this judicial district.

## Relevant Facts

**IBM**

14.  IBM is one of the world's largest technology companies. With over 400,000 employees, IBM is a globally-integrated enterprise that offers information technology and business process services, including computer hardware and software, and other advanced information technologies to a wide range of business and consumer clients.

15.  Like most technology companies and large global businesses, IBM relies upon trade secrets and other confidential information in managing its operations and personnel and developing and implementing its product offerings, technology services, business and sales strategies, acquisition and growth plans and strategies, and competitive sales campaigns, and each year spends billions of dollars and dedicates extensive research efforts to the development of technological innovations supporting its hardware, software and services businesses..

16.  In order to protect its confidential business information and trade secrets, IBM asks its employees (1) to enter into confidentiality agreements upon commencing their employment with the Company and (2) to reaffirm these agreements and the obligations assumed therein upon the termination of their employment with the Company. These agreements prohibit the disclosure or misuse of IBM confidential information by employees both during and after their employment by the Company.

**Geoffrey Valentine**

17.  Mr. Valentine spent more than 18 years working at IBM prior to his divestiture from the Company in 2009. He began work in March 1981 and worked at IBM continuously through March 2009.

4

18. During his career at IBM, Mr. Valentine held a number of management positions. Most recently, Mr. Valentine held the position of Logistics Program Manager in IBM's Global Asset Recovery Services organization.

19. Mr. Valentine's employment with IBM terminated on March 31, 2009, when he was divested from the Company as part of the acquisition of IBM's Global Logistics Operations group by SNFC Geodis, a logistics company based in France.

20. Mr. Valentine remained with Geodis until his employment terminated in January 2013.

## The Computer Fraud and Abuse Act

21. The CFAA prohibits any person from engaging in any of the following activities:

> (A) intentionally access[ing] a computer without authorization or exceed[ing] authorized access and thereby obtain[ing] . . . information from any protected computer (18 U.S.C. § 1030(a)(2)(C));
>
> (B) knowingly and with intent to defraud, access[ing] a protected computer without authorization, or exceed[ing] authorized access, and by means of such conduct further[ing] the intended fraud and obtain[ing] anything of value . . . [in excess of] $5,000 (18 U.S.C. § 1030(a)(4));
>
> (C) knowingly caus[ing] the transmission of . . . information . . . and as a result of such conduct, intentionally caus[ing] damage without authorization, to a protected computer (18 U.S.C. § 1030(a)(5)(A));
>
> (D) intentionally access[ing] a protected computer without authorization, and as a result of such conduct, recklessly caus[ing] damage; (18 U.S.C. § 1030(a)(5)(B));
>
> (E) intentionally access[ing] a protected computer without authorization, and as a result of such conduct, caus[ing] damage and loss (18 U.S.C. § 1030(a)(5)(C)); or

(F) with intent to extort from any person any money or other thing of value, transmit[ting] in interstate or foreign commerce any communication containing any . . . (i) threat to obtain information from a protected computer without authorization or in excess of authorization or to impair the confidentiality of information obtained from a protected computer without authorization or by exceeding authorized access; or (ii) demand or request for money or other thing of value in relation to damage to a protected computer, where such damage was caused to facilitate the extortion (18 U.S.C. § 1030(a)(7)).

22.   The CFAA defines the term "protected computer" to mean "a computer . . . which is used in or affecting interstate or foreign commerce or communication" (18 U.S.C. § 1030(e)(2)); and it defines the term "exceeds authorized access" to mean "to access a computer with authorization and to use such access to obtain or alter information in the computer that the accesser is not entitled so to obtain or alter" (18 U.S.C. § 1030(e)(6)).

23.   The CFAA provides that:

[a]ny person who suffers damage or loss by reason of a violation of [any of its provisions] may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief. (18 U.S.C. § 1030(g).)

24.   The CFAA defines the term "damage" to mean "any impairment to the integrity or availability of data, a program, a system, or information" (18 U.S.C. § 1030(e)(8)); and it defines the term "loss" to mean "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense" (18 U.S.C. § 1030(e)(11)).

**Mr. Valentine's Confidentiality Agreement with IBM**

25.   Mr. Valentine signed a confidentiality agreement upon commencing his employment with the Company, to prohibit the disclosure of

6

confidential IBM information by Mr. Valentine during and after his IBM employment, and to prohibit the use of IBM confidential information, other than in IBM's business, without IBM's written permission.

26. Mr. Valentine executed his Confidentiality Agreement with IBM on March 17, 1981. A true and correct copy of that agreement is attached hereto as Exhibit A.

27. In that agreement, Mr. Valentine acknowledged and agreed that:

> [he] will not, without IBM's prior written permission, disclose to anyone outside of IBM or use in other than IBM's business, either during or after [his] employment, any confidential information or material of IBM or its subsidiaries, or any information or material received in confidence from third parties by IBM or its subsidiaries. If [he] leave[s] the employ of IBM, [he] will return all IBM property in [his] possession, including all confidential information or material. (Confidentiality Agreement § 1.)

28. The Confidentiality Agreement provides the following definition for confidential information or material of IBM or its subsidiaries, as used in the foregoing provision:

> Confidential information or material of IBM or its subsidiaries is any information or material:
>
> (a) generated or collected by or utilized in the operations of IBM or its subsidiaries that relates to the actual or anticipated business or research and development of IBM and its subsidiaries; or
> (b) suggested by or resulting from any task assigned to [Mr. Valentine] or work performed by [Mr. Valentine] for or on behalf of IBM;
>
> and which has not been made available generally to the public. (*Id.*)

29. Mr. Valentine reaffirmed his continuing obligations under the Confidentiality Agreement when he signed a Statement of Understanding with IBM in

connection with the termination of his employment with the Company on March 18, 2009. A true and correct copy of that agreement is attached hereto as Exhibit B.

30. In the Statement of Understanding, Mr. Valentine stated that he "ha[d] been reminded of [his] responsibilities and legal obligations to IBM regarding confidential information and intellectual property that will continue after [his] employment with IBM ceases." (Statement of Understanding, Preamble.)

31. Mr. Valentine also stated that:

[He is] aware of [his] legal obligations as stated in the [Confidentiality Agreement] . . . to the effect that [he] will not, without IBM's written permission, disclose to anyone outside IBM or use in other than IBM's business, any confidential information or material of or possessed by IBM or its subsidiaries (*id.* at ¶ 1); and

[He understand[s] that [his] obligation not to use or disclose confidential information of IBM remains in effect after the termination of [his] employment with IBM and that if, at any time in the future, [he] wish[es] to disclose or use any such confidential information . . . [he] will, prior to such disclosure or use, obtain written permission from IBM to do so (*id.* at ¶ 4).

32. Mr. Valentine's obligations to IBM regarding the Company's confidential information continued in effect after his employment with the Company terminated, and applied to all IBM confidential information of which Mr. Valentine became aware, either during or after his employment with the Company.

33. Mr. Valentine also certified in writing that he had "returned all property in [his] possession . . . belonging to IBM or its subsidiaries." (*Id.* at ¶ 6.)

**Mr. Valentine's Unauthorized Accessing of IBM Systems and Threatened Use of IBM Confidential Information**

34. For purposes of unlawfully obtaining payment or other compensation from IBM, Mr. Valentine has declared and demonstrated that he has intentionally accessed IBM systems without authority, obtained IBM confidential

8

information he has no permission to see or use, retained and refused to return other IBM confidential information he took with him from IBM, and threatened to use such confidential information to cause harm to IBM.

35. Despite having signed the Confidentiality Agreement in March 1981 and the Statement of Understanding in March 2009, Mr. Valentine wrote to IBM on May 21, 2013, stating that he had obtained IBM confidential information through his unauthorized access of a protected computer.

36. Mr. Valentine threatened to disclose that IBM confidential information or use it to IBM's detriment unless the Company provided some compensation or payment to him, in clear violation of the CFAA. He also stated that, as a result of his unauthorized access of a protected computer, he was in possession of, among other things, employment-related data that he was "positive . . . would be of value externally."

37. Mr. Valentine admitted that the IBM information he claimed to have accessed through the use of a protected computer is "personal," "extremely sensitive," and "restricted business confidential." Mr. Valentine acknowledged that he aimed to have obtained information that he was not entitled to obtain, thereby exceeding his authorization as that term is defined by the CFAA. Mr. Valentine further stated that he had "methods of accessing more sensitive employee info[rmation]."

38. Mr. Valentine subsequently acknowledged that the information he had obtained was IBM confidential and restricted business information that he had never had authorization to access, either during or after his IBM employment.

9

39. Mr. Valentine also acknowledged that he wanted to be paid a "consulting fee" in order to reveal how he had obtained the IBM confidential information he was not entitled to obtain.

40. In a meeting with IBM personnel, Mr. Valentine stated (and showed) that (1) he had a list of IBM employees containing confidential and personal information, which he kept with him from the time of his employment at IBM, (2) he had considered selling it to someone outside IBM, and (3) he refused to return it to IBM—all in violation of his Confidentiality Agreement.

## COUNT I — Violation of the Computer Fraud and Abuse Act

41. IBM repeats and realleges, as if fully set forth herein, the allegations of Paragraphs 1 through 40 of the Complaint.

42. Mr. Valentine has intentionally and without proper authorization utilized interstate communication to access IBM's computer servers and thereby obtained information from those servers in violation of the CFAA, 18 U.S.C. § 1030(a)(2)(C).

43. IBM has suffered quantifiable damage and loss in excess of $5,000 as a result of Mr. Valentine's behavior in violation of the CFAA, including the cost of responding to and investigating Mr. Valentine's admittedly unauthorized access to a protected computer.

44. Mr. Valentine has intentionally accessed a protected computer without authorization, and as a result of such conduct, caused damage and loss.

45. Mr. Valentine has transmitted in interstate commerce, via email, a communication containing a threat to obtain information from a protected computer without authorization and to impair the confidentiality of information obtained from a

protected computer without authorization, unless IBM meets Mr. Valentine's demand for compensation;

46. Mr. Valentine has transmitted in interstate commerce a communication containing a demand for compensation from IBM in relation to damage to a protected computer, where such damage was caused to facilitate the Mr. Valentine's demand for compensation from IBM.

47. Mr. Valentine has accessed IBM's servers without proper authorization and, in doing so, has caused IBM damage in an undetermined amount to be proven at trial.

### COUNT II — Breach of Confidentiality Agreement

48. IBM repeats and realleges, as if fully set forth herein, the allegations of Paragraphs 1 through 47 of the Complaint.

49. The Confidentiality Agreement is an enforceable agreement that imposes upon Mr. Valentine contractual obligations.

50. Mr. Valentine has breached the terms of his Confidentiality Agreement by, among other things, using IBM confidential information other than in IBM's business and threatening to use and disclose IBM confidential information to the detriment of the Company.

51. If Mr. Valentine is not enjoined from using or disclosing IBM confidential information and from continuing to threaten to use or disclose IBM confidential information, and thereby violating his Confidentiality Agreement, IBM will be irreparably injured. IBM is entitled to recover monetary damages for the harm caused by Mr. Valentine's use or disclosure of its confidential information.

**PRAYER FOR RELIEF**

WHEREFORE, plaintiff demands judgment seeking relief against defendant as follows:

(A) Imposing a permanent injunction ordering Mr. Valentine to: (i) refrain from using or disclosing IBM confidential information in violation of his Confidentiality Agreement; (ii) refrain from continuing to access IBM servers and IBM confidential information without proper authorization; and (iii) disclose the means by which he claims to have obtained access to IBM systems and IBM confidential information;

(B) Imposing a permanent injunction requiring Mr. Valentine to return or destroy all information in his possession that he (i) took with him upon leaving the Company, in violation of his Confidentiality Agreement, or (ii) obtained by accessing IBM systems or IBM confidential information without proper authorization;

(C) Awarding IBM its attorneys' fees, costs, and disbursements incurred as a result of this action;

(D) Awarding IBM monetary damages in an amount sufficient to compensate the Company for Mr. Valentine's breaches of contract, misappropriation of confidential information, and violations of the CFAA; and

(E) Awarding IBM such further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues triable by a jury.

Dated: New York, New York
July 16, 2013

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

By: /s/ Martin Flumenbaum
Martin Flumenbaum
Robert A. Atkins
Marc Falcone

1285 Avenue of the Americas
New York, New York 10019-6064
(212) 373-3000
mflumenbaum@paulweiss.com
ratkins@paulweiss.com
mfalcone@paulweiss.com

*Attorneys for Plaintiff*
*International Business Machines Corporation*

13